CRISTOPHER G. SABOL (State Bar No. 251317)
LAW OFFICE OF CRISTOPHER G. SABOL
1422 Thomas Avenue
San Diego, CA 92109
Tel: 323-383-1155
cgsitm@gmail.com

MAURICE L. HUDSON (NY State Bar No. 4598801)
REESE RICHMAN LLP
875 Sixth Avenue—18th Floor
New York, New York 10001
Tel: 415-518-7762
mlhudsonlaw@gmail.com

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| SAMUEL DENNIS LOWE,<br><br>Plaintiff,<br><br>vs.<br><br>MEDTRONIC, INC. a Minnesota corp., MEDTRONIC MED-REL, INC., MEDTRONIC PUERTO RICO OPERATIONS CO., a corp. existing by virtue of the laws of the Cayman Islands, and "John Doe" 1-5 (said names being fictitious, as the true names are presently unknown), in their individual and official capacities,<br><br>Defendants. | Case No. 11-cv-9551-R (DTBx)<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## PRELIMINARY STATEMENT

1. Plaintiff Samuel Dennis Lowe ("Plaintiff"), by and through his undersigned counsel, brings this action for strict liability, negligence, breach of express and implied warranties and negligent infliction of emotional distress. This action is based upon Defendants' violations of the Federal Food, Drug, and Cosmetic Act, the Code of Federal Regulations, and other applicable federal requirements, in

the manufacture and distribution of a defective and unreasonably dangerous medical device. Plaintiff seeks compensatory, equitable, injunctive and declaratory relief for the debilitating physical, psychological, pecuniary and related injuries for which Defendants are liable. Based upon his personal knowledge and upon the investigation of his counsel, Plaintiff respectfully alleges the following:

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332 because the amount in controversy exceeds $75,000.00 and because there is complete diversity of citizenship between Plaintiff and Defendants. This Court has supplemental jurisdiction as to Plaintiff's claims arising under California state law pursuant to 28 U.S.C. §1367.

3. Venue is properly laid in the United States District Court for the Central District of California because the acts and injuries alleged herein substantially occurred within the geographical boundaries of the District. Furthermore, Plaintiff resides and receives care related to the injuries at issue in this action within the District.

## PARTIES

4. Plaintiff is a 40 year old male, resident and citizen of the City of Riverside, County of Riverside, State of California. At all times relevant to the acts alleged herein, Plaintiff resided in Southern California and within the geographic confines of the Central District of California.

5. Plaintiff resides with his fiancée Britanee Harmon and their one year old son.

6. Plaintiff has been a heart patient since approximately March of 2002. On or about November 11, 2003, an implantable cardioverter defibrillator ("ICD") was implanted into Plaintiff for the first time. On or about October 5, 2009, the first ICD was removed and replaced with a second ICD. On or about November 12, 2009, the second ICD malfunctioned and was itself explanted and replaced with a third ICD on or about November 16, 2009. In or around late October of 2011, Plaintiff was placed on the waiting list for a heart transplant at Cedars Sinai Medical Center and so remains as of this filing.

7. Plaintiff is employed as an Emergency Medical Technician ("EMT") at Corona Regional

2
complaint - CASE NO. 11-CV-

Medical Center; Plaintiff was placed on indefinite medical leave as of approximately November 9, 2011.

5. Defendant Medtronic, Inc., is a Minnesota corporation with its principle place of business at 710 Medtronic Parkway, Minneapolis, Minnesota 55432. Defendant Medtronic, Inc., maintains numerous domestic and international business offices, two of which are located in California (Northridge and Santa Rosa), as well as numerous domestic and international research and development facilities, manufacturing facilities and distribution centers, seven of which are located in California (Chatsworth, Corona, Goleta, Northridge, Santa Ana, Santa Rosa, and Sunnyvale).

6. Defendant Medtronic, Inc., purports to focus its businesses in six major health-related areas, the oldest and largest of which is Cardiac Rhythm Disease Management ("CRDM"). In fiscal year 2010, CRDM accounted for $5.8 billion—or 33%—of Medtronic's reported $15.8 billion in revenue. This revenue results in considerable measure from the sale of ICDs, one of Defendant Medtronic's primary CRDM product lines.

7. Defendant Medtronic Med-Rel, Inc., is, upon information and belief, a wholly-owned subsidiary of Defendant Medtronic, Inc., with its principal place of business at Road 909, km 0.4, Box Mariana, Humanco, PR.

8. Defendant Medtronic Puerto Rico Operations Co. is, a wholly-owned subsidiary of Defendant Medtronic, Inc., existing by virtue of the laws of the Cayman Islands, with its principal place of business at Road 149, km 56.3, Box 6001, Villalba, PR.

9. Defendants "John Doe" 1-5 are directors, officers, managers, employees and agents of Defendant Medtronic who, at all times relevant to the allegations herein, acted within the scope of their authority and on behalf of the other Defendants.

**FACTUAL ALLEGATIONS**

10. Plaintiff was hospitalized for several months in 2003 in connection with certain serious medical issues, including multiple myocardial infarctions.

11. On or about November 13, 2003, in the days prior to being discharged from the hospital,

Plaintiff received for the first time an implantable cardioverter defibrillator ("ICD").[1] The ICD, a GEM DR 7271 ("GEM DR"), and the two corresponding leads connected thereto, a 5076 CapSureFix Novus (atrial) and a 6947 Sprint Quattro Secure (ventrical), were, upon information and belief, manufactured by Defendant Medtronic with pre-market approval ("PMA") from the United States Food and Drug Administration ("FDA"), an agency of the Department of Health and Human Services.

12. In or around November or December of 2003, after being discharged from the hospital, Plaintiff was "shocked" once by the GEM DR, and the parameters of the device were reset shortly thereafter.

13. On or about April 16, 2004, Defendant Medtronic issued a nationwide recall affecting the GEM DR, citing defective high voltage capacitors which could adversely impact the GEM DR's ability to deliver indicated cardioversion or defibrillation therapy in response to certain cardiac arrhythmias.

14. On or about July 12, 2009, Plaintiff experienced an episode of ventricular tachycardia ("VT") and was shocked approximately 7 times by the GEM DR. Plaintiff was admitted to the hospital in connection with this event. A subsequent electrophysiology consult on or about September 30, 2009, indicated that the ICD failed to terminate the VT, which broke spontaneously, and that T-wave over-sensing led to 4 additional inappropriate ICD shocks. Plaintiff was ultimately advised that this ICD should be replaced.

15. On or about October 5, 2009, a second ICD manufactured by Defendant Medtronic with PMA approval from the FDA, a Secura DR D224DRG ("Secura DR"), was implanted into Plaintiff at St.

---

[1] Implantable cardioverter defibrillators are mechanical devices used to shock the heart into normal rhythm after patients suffer ventricular tachycardia (rapid heartbeat) or ventricular fibrillation (irregular rhythm of the ventricles). The devices are surgically implanted in the chest and connected to the heart via two electrical "leads" in a procedure typically lasting less than one hour.

Bernadine Medical Center in San Bernardino, California. The leads were not changed. Plaintiff was hospitalized overnight in connection with the procedure.

16. Shortly after the Secura DR was implanted, Plaintiff received a printed manual from Defendant Medtronic containing information about the device and setting forth a toll-free telephone number to call for assistance.

17. On or about November 12, 2009, Plaintiff was at his prior home in San Bernardino, California with his then-girlfriend and present fiancée Britanee Harmon, when an alarm on the Secura DR began to sound.

18. Plaintiff, unsure of the reason for the alarm and unaware of any problem, immediately contacted Defendant Medtronic via the toll-free assistance number set forth on the manual provided to him. Plaintiff spoke to a Defendant "John Doe" #1, who answered the phone, and to Defendant "John Doe" #2, who was reportedly "on-call".

19. In response to Plaintiff's concerns, Defendants John Doe #1 and 2 essentially told Plaintiff that he should go to bed and inform his doctor of the alarm in the morning.

20. Shortly after his telephone call with Defendants, the Secura DR began to shock Plaintiff repeatedly with such force and severity that he was physically thrown about the room. The Secura DR continued to deliver powerful and painful shocks to Plaintiff.

21. Ms. Harmon called for medical assistance, and paramedics responded to Mr. Lowe's home and transported him to the Emergency Department at Loma Linda University Medical Center.

22. The Secura DR continued to shock Plaintiff until medical personnel placed a magnet on Plaintiff's chest, at which point Plaintiff had already been subjected to between 20 and 30 shocks by the device.

23. During approximately the early morning hours on or about November 13, 2009, Plaintiff was transferred from the Emergency Department and admitted to Loma Linda University Medical Center

Adult Cardiology.

24. On or about November 15, 2009, Plaintiff was transferred to St. Bernadine Medical Center for further evaluation and treatment. One of Defendant Medtronic's technicians visited Plaintiff on this date and deactivated the alarm on the Secura DR.

25. On or about November 16, 2009, the Secura DR was explanted from Plaintiff and replaced with another of Defendant Medtronic's ICDs, the Virtuoso D154AWG. Plaintiff suffered various serious injuries for which he continues to receive treatment, including heart muscle damage and PTSD, in connection with the Secura DR's malfunctioning.

26. Defendants issued Medtronic Event Analysis and Reporting System report #E928871 dated October 19, 2010, relating to the explanted Secura DR. The report indicating that Plaintiff had received "26 inappropriate shocks due to noise" and reflected that its analysis "identified the malfunction as due to gate current leakage on one of the integrated circuits" resulting from the "failure of an insulating layer of a transistor (gate oxide)" and classifying the event as "a random component failure."

27. On or about October 21, 2011, the Secura DR was recalled pursuant to Recall No. Z-0115-2011. The recall cited a software issue.

28. Prior to Plaintiff's implantation of the Secura DR in October of 2009, Defendant Medtronic had received several reports indicating serious problems or malfunctions with the device. In several of these instances, including events involving "inappropriate shocks" similar to those received by Plaintiff, Defendant Medtronic did not report the information to the FDA until several months later.

29. Pursuant to FDA regulations, Medtronic was required to report to the FDA adverse events associated with a medical device within 30 days after it became aware that a device may have caused or contributed to death or serious injury, or that a device has malfunctioned and would be likely to cause or contribute to death or serious injury if the malfunction was to recur. 21 C.F.R. § 803.50.

30. Prior to Plaintiff's implantation of the Secura DR in October of 2009, Defendant

Medtronic received several reports indicating that unused Secura DRs malfunctioned during the implantation procedure and that the physicians elected not to implant the devices. Certain of these reports also note apparent physical defects in the devices.

31. Pursuant to FDA regulations, Defendant Medtronic was required to adhere to conduct quality audits, maintain production processes and controls to ensure devices conform to specifications, and implement procedures to identify, segregate, and otherwise control non-conforming product. Medtronic is also required by FDA regulations to timely investigate serious device-related events and malfunctions—failure to do so is explicitly deemed a violation of federal law. 21 C.F.R. §§ 820.01, *et seq.*

32. Prior to the malfunction of the Secura DR from November 12-16, 2009, Defendant Medtronic forwarded to Plaintiff materials which represented that Defendants operated a telephonic resource which could be used by Plaintiff for assistance with his device.

33. When Plaintiff contacted Defendants' telephone assistance line, he was not informed of existing problems with the Secura DR of which Medtronic was aware or of the danger associated with the alarm activation, and was not provided with reasonable assistance.

34. Pursuant to FDA regulations, Defendant was required to ensure that all representations in descriptive or informational literature accompanying the subject device is not false or misleading. 21 C.F.R. § 801. Additionally, by inducing Plaintiff to contact their assistance line, Defendants had a duty to act reasonably in response to Plaintiff's call.

35. Upon information and belief, on or about July 3, 2007, the FDA directed a Warning Letter to Defendants regarding violations of federal regulations, including failures to implement required complaint handling procedures and failure to submit required reports within 30 days. The Warning Letter indicated that the regulatory violations detected by the FDA could reflect serious underlying problems in Defendant Medtronic's manufacturing and quality assurance systems.

## CLAIMS FOR RELIEF

## COUNT I—STRICT LIABILITY—FAILURE TO WARN

36. Plaintiff hereby incorporates by reference all preceding paragraphs as if fully set forth herein.

37. At all times relevant hereto, Defendants were engaged in the development, testing, manufacturing, marketing, and sales of Secura DR ICDs. Defendants designed, manufactured, assembled and sold Secura DRs to medical professionals, knowing that they would then be implanted in patients with heart disease and disorders.

38. Defendants distributed and sold the Secura DR implanted in Plaintiff in the condition in which it left its place of manufacture, in its original form of manufacture, including the defects described herein.

39. Defendants knew or should have known that their failure to adhere to federal regulations governing the manufacture of the Secura DR caused the product to become adulterated and unreasonably dangerous.

40. Defendants failed to provide adequate and timely warnings or instructions regarding the Secura DR and the known defects.

41. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered and will continue to suffer severe physical injuries and/or death, severe emotional distress, mental anguish, economic losses, and other damages for which he is entitled to compensatory and equitable relief in an amount to be proven at trial.

## COUNT II—STRICT LIABILITY—MANUFACTURING DEFECT

42. Plaintiff hereby incorporates by reference all preceding paragraphs as if fully set forth herein.

43. The Secura DR was defectively manufactured because Defendants failed to comply with

the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 321, et seq., and the Medical Devices Amendment thereto ("FDCA") and because the foreseeable risks of mechanical malfunction outweigh the benefits associated with the device.

44. The Secura DR is inherently dangerous for its intended use due to manufacturing defects and improper functioning.

45. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered and will continue to suffer severe physical injuries and/or death, severe emotional distress, mental anguish, economic losses and other damages for which he is entitled to compensatory and equitable relief in an amount to be proven at trial.

## COUNT III—NEGLIGENCE

46. Plaintiff hereby incorporates by reference all preceding paragraphs as if fully set forth herein.

47. At all relevant times, Defendants had a duty to manufacture the Secura DR in adherence to the FDCA to ensure consumer safety.

48. Defendants breached their duty of reasonable care by failing to comply with FDCA and FDA regulations and manufacturing and assembling the Secura DR in such a manner that it was prone to cataclysmic malfunction and failure. Defendants further breached their duty of reasonable care by negligently hiring, supervising and training employees and by failure to provide Plaintiff with appropriate warnings and information after inducing Plaintiff to contact Defendants' telephone line for assistance with the device.

49. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered and will continue to suffer severe physical injuries and/or death, severe emotional distress, mental anguish, economic losses and other damages for which he is entitled to compensatory and equitable relief in an amount to be proven at trial.

## COUNT IV—NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

50. Plaintiff hereby incorporates by reference all preceding paragraphs as if fully set forth herein.

51. Defendants carelessly and negligently manufactured, marketed and sold the Secura DR, carelessly and negligently concealed Secura DR defects and delayed reporting of adverse events, and misrepresented the quality, safety and usefulness of the Secura DR in violation of federal regulations.

52. Plaintiff was directly involved in and impacted by Defendants' carelessness and negligence in that Plaintiff has sustained and will continue to sustain severe physical injuries and/or death, economic losses, severe emotional distress and mental anguish, including, but not limited to, fear, stress and anxiety, and other damages as a direct result of the implantation in Plaintiff's body of the defective Secura DR manufactured, sold and distributed by Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment against Defendants as follows:

1. Economic and non-economic damages in an amount exceeding $75,000 as provided by law and supported by the evidence at trial;
2. Compensatory damages;
3. Attorneys' fees and costs;
4. Prejudgment interests and costs; and
5. Such other and further relief, including equitable relief, as the Court may deem just and proper.

Dated: November 16, 2011

THE LAW OFFICE OF CRISTOPHER G. SABOL

_____
Cristopher G. Sabol
Attorney for Plaintiff

CRISTOPHER G. SABOL (State Bar No. 251317)
LAW OFFICE OF CRISTOPHER G. SABOL
1422 Thomas Avenue
San Diego, CA 92109
Tel: 323-383-1155
cgsitm@gmail.com

MAURICE L. HUDSON (NY State Bar No. 4598801)
REESE RICHMAN LLP
875 Sixth Avenue—18th Floor
New York, New York 10001
Tel: 415-518-7762
mlhudsonlaw@gmail.com

*Attorneys for Plaintiff*